**RADOM & NEIDORFF, INC.**
v.
**UNITED STATES.**
No. 173–58.

United States Court of Claims.
July 15, 1960.

Michael Kaminsky, New York City, for plaintiff. Worthman & Kaminsky, New York City were on the briefs.

John F. Palmer, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. James P. Garland, Jerome Fink, and June A. Murray, Washington, D. C., were on the brief.

LARAMORE, Judge.

This is an action to recover Federal income taxes and interest allegedly overpaid by plaintiff for the taxable year ended December 31, 1950.

The question presented is whether the deduction of accrued salary expenses ohtherwise allowable by section 23(a) (1), Internal Revenue Code of 1939, 26 U.S.C. § 23(a) (1952 Ed.), is barred by section 24(c) of the Internal Revenue Code of 1939, 26 U.S.C. § 24(c).

Plaintiff, a taxpayer, is a New York corporation organized in 1916. Its capital stock issued and outstanding was owned in equal shares by David Radom and Henry Neidorff, the husband of David Radom's sister. Henry Neidorff died on February 18, 1950, and his wife, Anna, succeeded to the ownership and possession of a full one-half interest in the corporation's stock then outstanding. During the year 1950 and subsequently, the said David Radom and the said Anna Neidorff were engaged in a personal controversy relating to the control of plaintiff corporation. During the controversy, it was impossible to obtain the agreement of the stockholders for the election of directors and appointment of officers.

The controversy resulted in protracted litigation in the courts of the State of New York for the purpose of obtaining an enforced dissolution of plaintiff. It was eventually held by the New York court that an order for dissolution should not be granted.

During the year 1950, and during the 75-day period thereafter, and solely by reason of said personal controversy, Anna Neidorff arbitrarily and wrongfully refused to countersign any check for any part of compensation due to David Radom in payment for services performed. However, the said Anna Neidorff affixed her signature to all other checks issued by plaintiff. Plaintiff's bank required the said countersignature in each instance or the check would not be paid. David Radom was employed by plaintiff during the entire year 1950 at the agreed annual compensation of $24,400. Radom fully and satisfactorily discharged his duties and was entitled to receive all of the agreed compensation of $24,400. Plaintiff was financially able to make payment but Radom, in spite of repeated attempts by plaintiff to pay the entire amount, received only $6,325. Plaintiff was, however, against its will, unable to make payment of the balance of $18,075 either in installments during the year or by a single payment at the end of the year or within a 75-day period ending immediately after the termination of petitioner's taxable year, which was December 31, 1950. Plaintiff has at all times admitted liability for the full amount of Radom's salary. Anna Neidorff did not contend that plaintiff was not liable, but alleged an offset was due plaintiff.

Radom was on the cash basis of accounting and consequently did not report as income in 1950 or 1951 any part of the salary due him from plaintiff for the year 1950.

The taxpayer was on the accrual method of accounting and in 1950 accrued the entire obligation of $18,075 as an expense, and deducted the full amount as officer's salary, from gross income reported on its Federal income and excess profits tax returns for the calendar year 1950.

Under date of July 29, 1954, David Radom mailed a letter to the Director of Internal Revenue in New York consenting to any additional assessment due to the application of section 24(c) as amended by the Technical Changes Act of 1953 to his back salaries. Under date of August 16, 1954, plaintiff mailed a letter to the said Director in which it elected to come under the provisions of the Technical Changes Act of 1953 as applied to accrued salaries for the year 1950, under section 24(c).

On January 21, 1955, the Commissioner of Internal Revenue forwarded to plaintiff a statutory notice of deficiency of $10,624.17 in plaintiff's income taxes for the calendar year 1950. The major cause for the claimed deficiency was the disallowance pursuant to section 24(c) of the Internal Revenue Code of 1939 of the entire amount of the deduction against gross income of $18,075.

On or about June 21, 1955, the full amount of the assessment, together with interest in the amount of $2,683.90 was paid to the District Director of Internal Revenue. Plaintiff on September 15, 1955, filed a claim for refund which was rejected on August 9, 1956. This suit results.

Under section 23(a) (1) of the Internal Revenue Code of 1939, supra, a taxpayer may deduct from income all ordinary and necessary business expenses "including a reasonable allowance for salaries or other compensation for personal services actually rendered."

Section 24(c) provides that no deduction shall be allowed under section 23(a), relating to expenses incurred, or under section 23(b), relating to interest accrued—

"(1) If within the period consisting of the taxable year of the taxpayer and two and one-half months after the close thereof (a) such expenses or interest are not paid, and (b) the amount thereof is not includible in the gross income of the

person to whom the payment is to be made; and

"(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

"(3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24(b)."

By 1953 the established judicial trends were (1) to treat negotiable promissory demand or time notes, worth face value, as constituting payment (Musselman Hub-Brake Co. v. Commissioner, 6 Cir., 139 F.2d 65); (2) to reject constructive payment as payment (P. G. Lake, Inc. v. Commissioner, 5 Cir., 148 F.2d 898); and (3) to permit the deduction of a business expense if the creditor were deemed to have constructively received the amount due him within the taxpayer's taxable year but not if the constructive receipt occurred any time following the close of such taxable year, even within the 2½ month period. P. G. Lake, Inc. v. Commissioner, supra.

Under the Technical Changes Act of 1953, section 202, 67 Stat. 617, amending section 24 of the Internal Revenue Code of 1939, a further test for the application of the statutory restriction was added; i. e., that the creditor must not have constructively received the amount due him either within the taxable year of the taxpayer or within the 2½ months following the close of such year. In other words, for the taxable years beginning after December 31, 1950, if the creditor had actually or constructively received the amount due him, either within the taxable year of the taxpayer or not later than 2½ months following the close of such year, the taxpayer-debtor will not be denied the deduction even though all

other requirements for the application of the statutory restriction have been satisfied.

Under the 1953 amendment, supra, the taxpayer was given an opportunity to elect to make the new amendment applicable to any taxable year or years of the taxpayer beginning after December 31, 1945 and before January 1, 1951. This election must have been exercised, in accordance with the regulation, before August 16, 1954.

The 1953 amendment provided "such election for any taxable year shall not be valid as to any amount unless, at or before the time when such election is filed—

"(A) the person (hereinafter in this paragraph referred to as the 'payee') to whom such amount was payable included such amount in gross income for his taxable year for which such amount was includible in gross income, or

"(B) the payee files a written consent to the assessment and collection of any deficiency and interest resulting from the payee's failure to include such amount in gross income for such taxable year, or

"(C) the payor pays an amount equal to the deficiency and interest which would be payable by the payee pursuant to subparagraph (B) if he filed such consent. (Any amount paid under this subparagraph shall be assessed, notwithstanding any law or rule of law to the contrary, as an addition to the tax of the payor for the year for which the election is filed.)

Plaintiff complied with the above by the letter from Radom to the Director of Internal Revenue whereby he (Radom) agreed to pay any assessment by reason of section 24(c) as amended and the letter to the Director from plaintiff taxpayer stating that it elected to come under the provisions of the 1953 amendment.

The controversy then boils down to this—did the creditor, Radom, either actually or constructively receive payment

of his salary within the statutory period, i. e., not later than 2½ months after the close of his taxable year?

It is clear from the record that the answer to this question is in the negative. Because of the refusal of Anna Neidorff to countersign the check, Radom has never received payment. Under these circumstances plaintiff has not met the burden of proving actual or constructive payment within the period required by statute.

There can be no doubt that the primary motivation of Congress in drafting section 24(c) was to prevent tax avoidance. However, the plain and unambiguous wording of the statute compels the view that as enacted, its scope is much broader. Nor does the legislative history bear out plaintiff's contention that the legislation was not meant to apply to a situation such as presented here. Had Congress intended section 24(c) to apply solely in cases of attempted tax avoidance, which is not present here, either the wording of the statute or the legislative history would make such intention clear. Obviously the statute is not so worded and the legislative history does not conclusively show intent to include only situations involving tax avoidance.

In other words, the amendment as written deals with the result of a failure to pay, and permits deduction if the salary was constructively received within the period, even if not actually paid. Mertens Law of Federal Income Taxation, Vol. 4, § 25.11 (1954 Ed.).

Obviously Congress could not and did not foresee the events which have taken place and which, by application of the statute, probably results in harsh treatment to the taxpayer. That certain inequities result from the tax laws is a natural consequence of an intricate tax system. However, as the Supreme Court held in United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 236, 75 S.Ct. 733, 736, 99 L.Ed. 1024, " * * * But as we have said before, 'general equitable considerations' do not control the question of what deductions are permissible." To grant plaintiff the relief prayed for would either be to invoke equity or to legislate, which in either instance, is not our province. Therefore, plaintiff's petition must be dismissed.

It is so ordered.

JONES, Chief Judge, and DURFEE, MADDEN and WHITAKER, Judges, concur.