DILLARD PAPER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2804-62. Filed June 17, 1964.

*Claude C. Pierce*, for the petitioner.
*Wallace E. Whitmore*, for the respondent.

OPINION

BRUCE, *Judge:* Respondent determined a deficiency in the income tax of petitioner for the taxable year 1958 in the amount of $1,735.65. The sole issue is whether petitioner is entitled to a deduction as a long-term capital loss in the amount of $12,918.87 resulting from its transfer of securities to the fiduciary of its profit-sharing trust in payment of its contribution thereto.

All of the facts are stipulated and are found accordingly.

Petitioner is a corporation organized under the laws of the State of North Carolina with its principal place of business in Greensboro, N.C., and is engaged in the wholesaling of paper of all kinds for commercial use. Petitioner keeps its books and records and files its in-

come tax returns on an accrual basis of accounting. Petitioner's Federal income tax return for the calendar year 1958 was timely filed with the district director of internal revenue for the district of North Carolina.

On or before October 25, 1949, petitioner adopted a profit-sharing retirement plan (hereinafter called plan). Pursuant thereto, on October 25, 1949, a "Profit Sharing Retirement Plan and Trust Agreement of Dillard Paper Company, Inc." (hereinafter called trust) was established upon the execution of the trust agreement by petitioner and Wachovia Bank and Trust Co., the designated trustee. During the period in issue, the Wachovia Bank and Trust Co. maintained offices in Winston-Salem and Greensboro, N.C.

The trust agreement provides for a profit-sharing administration committee in article II of the agreement, which provides in part as follows:

(1) The Committee shall be responsible for the general administration of the Plan and for carrying out its provisions. The members of the Committee shall be appointed from time to time by the Board to serve without compensation at the pleasure of the Board, but a member may resign at any time.

Article XII of the trust agreement, which specifies the powers and duties of the trustee, authorized the trustee in paragraph (2) (d):

(d) To invest or reinvest corpus and income of the funds belonging to the trust in such common or preferred stocks, bonds, or other securities (including common or preferred stocks, bonds, or other securities of the Company) or real or personal properties, as shall from time to time be approved by the Trust Investment Committee or other similar Committee of the Trustee; or to hold any part of such corpus or income in cash;

The plan was amended effective December 1, 1950, to permit affiliated companies to utilize the plan and to effect certain technical and other changes immaterial herein. No major changes were made in the trustee's powers. On September 28, 1951, the plan was again amended by an addition to article XII(2) (d) as follows:

provided, however, that the Trustee shall make such investments or reinvestments of corpus or income as it shall be directed to make by the Board of Directors of the Dillard Paper Company, Inc., and shall hold the same as assets of the trust until the said Board of Directors shall direct that they be sold, exchanged, or liquidated, and the Trustee shall not be liable or responsible in any degree with respect to any such investments or reinvestments or the retention thereof in the trust.

From October 25, 1949, to date, the plan has been in full force and effect. From time to time (as proposed amendments warranted) throughout such period, respondent determined that the trust established pursuant to the plan was entitled to exemption and that petitioner's contributions to the trust were allowable deductions from gross income in accordance with the Internal Revenue Code. From

time to time during such period, the trustee inquired of respondent as to whether proposed investments in stock or notes of petitioner would disqualify the plan. In such instances, the trustee was advised that such investments would not disqualify the plan. At the end of 1958 the trust held investments valued at acquisition in the amount of $408,104.16, of which $259,938, or 63.69 percent, was invested in petitioner's securities.

The annual contribution to the trust is determined by applying the plan formula to the consolidated net income of the group of affiliated corporations. The contribution of each corporation is determined by apportionment pro rata.

A determination of the proper amount applicable to petitioner for the year 1957 was made at the close of the year 1957 in the amount of $11,052.12. The trust was credited with this amount on the books and records of petitioner. Petitioner likewise made a corresponding charge on its books to profit and loss. Petitioner's balance sheet reflected the $11,052.12 as an account payable. Petitioner claimed $11,052.12 as a deduction on its Federal income tax return for 1957. Such deduction has been allowed by respondent.

The above-stated $11,052.12 was transferred or paid to the trust by petitioner on February 24, 1958, as follows:

| Transferred or paid to trust by petitioner | Petitioner's adjusted basis | Fair market value at time of transfer | Difference |
|---|---|---|---|
| 46 shares of stock of Continental Can Co. | $14,942.87 | $2,024.00 | ($12,918.87) |
| Petitioner's treasury stock | 7,937.50 | 9,000.00 | |
| Cash | 28.12 | 28.12 | |
| | 22,908.49 | 11,052.12 | |

At the conclusion of 1957 and at the time of this transfer, petitioner had cash and other assets sufficient in amount to have satisfied its contribution to the trust for 1957.

In its 1958 Federal income tax return petitioner claimed a loss in the amount of $12,918.87 on the sale of the Continental Can Co. stock to the trust. The amount of $6,942.59 of the loss claimed was applied against realized capital gains of like amount (from sources unrelated to the issue in the instant case), thus eliminating the $6,942.59 realized capital gain entirely from taxable income.

In his statutory notice of deficiency respondent determined:

(c) The long-term capital loss of $12,918.87 shown on the return from the sale or transfer of 46 shares of Continental Can Company stock to an employees' profit-sharing trust of which you are the grantor is disallowed under the provisions of section 267(a) and other applicable statutes of the Internal Revenue Code of 1954.

The sole issue is whether petitioner is entitled to deduct capital loss in the amount of $12,918.87 realized upon the transfer of securities by

petitioner to the fiduciary of its employees' profit-sharing trust in payment of its contribution under its profit-sharing plan. Respondent concedes that the transfer of these securities to petitioner's profit-sharing trust is to be treated as a sale or exchange under the rationale of Rev. Rul. 61–163, 1961–2 C.B. 58, and *United States* v. *General Shoe Corporation*, 282 F. 2d 9 (C.A. 6).

Section 267 of the Internal Revenue Code of 1954 [1] provides in part:

SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS.

(a) DEDUCTIONS DISALLOWED.—No deduction shall be allowed—

(1) LOSSES.—In respect of losses from sales or exchanges of property (other than losses in cases of distributions in corporate liquidations), directly or indirectly, between persons specified within any one of the paragraphs of subsection (b).

\*      \*      \*      \*      \*      \*      \*

(b) RELATIONSHIPS.—The persons referred to in subsection (a) are:

\*      \*      \*      \*      \*      \*      \*

(4) A grantor and a fiduciary of any trust;

The term "person" is defined by section 7701 as follows:

(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

(1) PERSON.—The term "person" shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

Petitioner contends that the application of section 267 by virtue of subsection (b)(4) to exchanges of property between a grantor and a fiduciary of any trust does not include an exchange between a corporate grantor and a fiduciary of its employees' profit-sharing trust. Petitioner relies in part upon H. Rept. No. 1546, 75th Cong., 1st Sess., p. 27 (1937), 1939–1 C.B. (Part 2) 722, and Regs. 118, sec. 39.24(b)–1, and predecessor regulations, which allegedly interpreted section 24 of the 1939 Code, the predecessor of section 267, and predecessor sections as applying only to individual grantors. Petitioner further relies upon the allegation that the exchange in the instant case is not of the type which section 267 was intended to prevent because it resulted in real economic loss since under the trust agreement petitioner's contribution cannot revert to petitioner until all rights of the beneficiaries under the plan have been satisfied and because a deductible loss could have been obtained by selling the stock in question to a third party and transferring the proceeds as its contribution to the profit-sharing trust. Respondent contends that the application of section 267 to exchanges of property between "persons" specified in subsection (b) clearly indicates that Congress intended for section 267 to apply to corporate grantors and that the use of the pronoun "any"

---

[1] Except as otherwise indicated, all section references hereinafter will refer to the Internal Revenue Code of 1954.

to describe trusts establishes that section 267 was intended to apply to all trusts, including employee profit-sharing trusts.

We find nothing in the committee reports or legislative history of section 267 and predecessor sections which indicates that the language of section 267 is intended to have a meaning other than that normally implied by the words employed. Section 267(a)(1) denies the deduction of losses from the sale or exchange of property between "persons," which term is defined by section 7701 to include corporations. Section 267(b)(4) specifies as persons, for purposes of subsection (a), "a grantor" and "a fiduciary of any trust." The use of the word "persons" in section 267(a)(1) to describe the parties between whom losses are disallowed and the use of the adjectives "a" and "any" to describe the words "grantor" and "trust" in section 267(b)(4) clearly imports that a corporate grantor and a fiduciary of its employees' profit-sharing trust are included within the meaning of the latter two words.

Since a corporate grantor and a fiduciary of its profit-sharing trust are persons between whom losses from the sale or exchange of property are disallowed by section 267, petitioner's allegation that the exchange in the instant case is outside the intent of the statute is without merit. Section 267 was enacted to correct what Congress considered the abusive, frequently employed practice of creating losses for purposes of avoiding the income tax through transactions between certain specified persons. See H. Rept. No. 704, 73d Cong., 2d Sess., p. 23 (1934), 1939-1 C.B. (Part 2) 554, 571. To prevent this tax avoidance, Congress denied deduction of losses on all exchanges between these persons regardless of their subjective intent. Thus, whether or not petitioner transferred the stock in question as its contribution to its profit-sharing trust for the purpose of reducing taxes or could have obtained a similar tax reduction by alternative means, section 267 requires denial of the deduction of the $12,918.87 loss realized upon this transfer since the exchange was effected between persons specified in section 267. Although the result may seem harsh, to hold otherwise would require us to invoke equity or to legislate, neither of which is within our province. Cf. *Hydro Molding Co.*, 38 T.C. 312 (1962); *Radom & Neidorff, Inc.* v. *United States*, 281 F. 2d 461 (Ct. Cl. 1960). Moreover, the result here may not be as harsh as it seems when viewed in the light of the close relationship which existed between the parties and the control which petitioner had over the investment policies of the trust.

*Decision will be entered for the respondent.*